Richard I. Cantor, Esq. Corporation Counsel, Poughkeepsie
You have asked several questions concerning your city's power to sell city real estate in light of section 23(2)(b) of the General City Law.
Section 23 should be read both in the context of the status of cities in 1913 when the section, among others, was added to the General City Law (ch 247), and the status of cities under the Municipal Home Rule Law today and from 1924 to 1964 under the City Home Rule Law.
Cities in New York are created only by a special act consisting of the corporate charter of the city as a municipal corporation. Until the 20th Century the structure and powers of cities were determined almost solely by the charter. The Constitution of 1894 provided the first significant step toward home rule by dividing cities into three classes for the purpose of facilitating general laws governing cities and requiring submission to a city for approval of any special act not covering all cities in one of the classes. (The Legislature had the power to override a city's disapproval.) After the turn of the century, the Legislature began enacting general laws governing cities. One of these was the General City Law, first enacted in 1909 (ch 26, derived from an earlier version of 1900, ch 327), and substantially expanded in 1913 (ch 247). The 1913 version added Article 2-A "Powers of Cities", consisting of section 19, which granted each city "power to regulate, manage and control its property and local affairs"; section 20, which granted all cities 23 specific powers; section 21, which defined "public or municipal purpose" and "general welfare" to encompass most, if not all, of the normal purposes of a government other than foreign relations; section 22, which noted that the granted powers were "in addition to and not in substitution for" powers a city already had; section 23, which dealt with the manner in which the granted powers were to be exercised; and section 24, which cautioned that the article was not to be construed "as an act in derogation of the powers of the state". Except for additional grants of power and the transfer of financial restrictions from section 23 to the Local Finance Law, Article 2-A remains much the same today.
Article 2 A was a significant step toward home rule but did not constitute home rule. Home rule exists only if there is some constitutional curb on the power of a legislature to deal directly in the affairs of a local government.* Under Article 2-A the Legislature was still free to pass a special act denying to one or more cities a power granted in section 20. (Compare Second Class Cities Law, § 42 with General City Law, § 20[22]; see our informal opinion No. 83-11, copy enclosed.) Not until the adoption of the Home-Rule Amendment in 1923 (then Art XII, § 2), were there any restrictions on the Legislature's power to legislate by special act in relation to cities.** The restriction prohibited enactment of legislation "relating to the property, affairs or government of cities" except (a) by "general laws which shall in terms and in effect apply to all cities" or (b) by a special act on an emergency message from the Governor and passage by a two-thirds vote in each House. The City Home Rule Law enacted in 1924 matched this restriction by authorizing cities by local law to change or supersede any provision of any act that did not "in terms and in effect apply alike to all cities". These home-rule changes had a significant effect on section 23 of the General City Law.
Section 23(2)(b) restricts the sale or lease of city real estate by requiring a three-fourths vote of the legislative body, sale or lease by public auction, and a referendum on petition. Paragraph (b) also provides, however, that these restrictions are not applicable in any city where "existing provisions of law" otherwise provide for disposition of real estate. As of 1913, of course the existing provision of law would have been a special-act charter provision.
On its face, section 23 as of 1913 probably was not a general law as defined beginning in 1924. In any event, the section is not a general law today. Chapter 668 of the Laws of 1973, passed on a home-rule request, amended the New York City Charter to provide that the Board of Estimate could authorize the sale or lease of real estate either at public auction or by sealed bids. Prior to this change, the Board of Estimate did the selling or leasing (Charter, § 384[1]). (The original charter of "Greater" New York City provided that property was to be sold at auction under the direction of the "appropriate head of department" [L 1897, ch 682, § 1553]).
It seems reasonably obvious that the sale of city real estate is a matter relating to "property, affairs or government". Since section 23 relates to property and is not a general law, your city by local law may supersede section 23. (Towns and villages, neither of which is faced with a section 23, may sell real property at auction or by negotiated sale, subject only to receiving an adequate price under all the circumstances. See 1981 Op Atty Gen [Inf] 149 and 1980 id. 231, copies enclosed.)
You raise specific questions concerning section 23 as it is affected by two provisions in your city charter. One provision, section 27, provides that no real estate may be sold except by a two-thirds vote of the common council. This requirement appeared in the original charter (L 1910, ch 632, § 9). Since this provision predates the enactment of section 23, the "savings" paragraph at the end of that section relieves the city of any requirement to permit a referendum on petition otherwise required by section 23. The other charter provision, section 189, authorizes the common council by resolution to sell or lease real property for a negotiated sum. This was enacted by local law to supersede the public auction requirement of section 23(2)(b) (Local Law No. 7 of 1977). We understand that that local law was enacted subject to a referendum on petition as required by Municipal Home Rule Law, § 24(2)(g).
As we read the present status of your city's power to sell or lease real estate, you
(1) may sell real property by public auction or negotiated sale if the common council approves the sale by a two-thirds vote; and
(2) may lease real property by public auction or negotiated sale but only upon a three-fourth's vote.
The reason for this is that a decrease in the number of votes required to act curtails the power of an elective officer — except where the change has no effect, as going from three-fourths to two-thirds vote of a five-member body. The very requirement for an extraordinary majority is designed to make action more difficult, which increases the power of each member. For example, in a seven-member body two members have a veto power if a three-fourth's vote is required whereas it takes three members to veto an action requiring two-third's vote. A local law that curtails the power of an elective officer is subject to a mandatory referendum (id.,
§ 23[2][f]). Since your 1977 local law was not voted upon in a referendum, the vote requirement for leasing remains unchanged. If a mandatory referendum had been held and the local law enacted, leasing could have been by a majority vote.*
We conclude that section 23(2)(b) of the General City Law may be superseded by a local law subject to a referendum on petition or a mandatory referendum, depending upon the changes to be made in superseding the various restrictions in that section.
* For examples of constitutional restrictions in other states, see Alaska Constitution, Art X, § 11 ("A home rule borough or city may exercise all legislative powers not prohibited by law or by charter."); Illinois Constitution, Art VII, § 6(i) ("Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."). Both states also provide that no local or special act may be passed if a general law could be made applicable (Alaska, Art II, § 19; Illinois, Art IV, § 13).
** This is not strictly true. Article III, § 17 has long prohibited passage of "a private or local bill" in enumerated "cases", some of which could affect a city. (See our informal opinion No. 83-11,supra.)
* You state that the city is considering the sale of an interest in your water treatment plant to a neighboring municipality. In this case, you are relieved of the restrictions in section 23(2)(b) and section 27 of your charter. Section 72-h of the General Municipal Law authorizes a sale or lease of real property from one municipality to another municipality "[n]otwithstanding any provision of any general, special or local law or of any charter" (subd [a]). Subdivision (b) provides that the section is not applicable to inalienable property.